If an act by a prosecutor is protected by absolute prosecutorial immunity and Eleventh Amendment immunity, then the policies that govern or affect that act also are protected by Eleventh Amendment immunity. This is because there's no real meaningful analytical distinction between the act of a prosecutor and the policies governing an act. For example, in the Los Angeles County District Attorney's Office, it's a very large office, and the acts of the prosecutors must be governed by policies that are created by people who are higher up the ladder in the District Attorney's Office. Otherwise, the District Attorney has no control over what goes on in the courtroom. The act that injured the plaintiff here was a failure to disclose Brady material for the witness Edward Fink. And that act of failing to disclose Brady material is an act that's protected by absolute prosecutorial immunity, and this Court has recognized that protection. In order to preserve the distinction between prosecutorial, prosecutive policies, and administrative policies that have been referenced in the immunity cases and in the policy analysis by this Court and by the California Supreme Court, this distinction must be preserved. And the only way to preserve it is to provide policy, provide Eleventh Amendment protection, immunity protection, for the policy makers as well as for the act itself. Is the natural consequence of your theory that in California there could never be a 1983 case for selective prosecution? Yes, Your Honor, I believe that's right, because under the Eleventh Amendment immunity analysis by both this Court and by the California Supreme Court, the decision to prosecute is a decision that's protected by absolute prosecutorial immunity. Yes, yet we do have cases out of our circuit in which 1983 liability has been predicated on selective prosecution. What do you make of those? Well, Your Honor, they don't match the analysis of Monell in that if they are brought on a Monell theory where it is a policy analysis and the act that injures the plaintiff must have a direct causal link to the policy created by the policy maker. In doing that analysis, it's that link of causality that creates the claim that also creates the Eleventh Amendment immunity. And I gather your answer would be the same if we, in case of selective non-prosecution, let's say that a prosecutor's office said we're not going to prosecute any claims in which there's a Catholic victim. Again, you'd say absolutely immune, there's no 1983 action based on that as well, right? I agree. Yes, Your Honor, I would say that since immunity applies to the decision to prosecute, that Eleventh Amendment immunity also would apply to the decision to not prosecute, the decision to prosecute or not to prosecute there. In that situation, there's certainly political remedies for electors to choose a district attorney who will decide not to selectively prosecute. This policy, the Eleventh Amendment immunity, is limited by that prosecutorial immunity, and the prosecutorial immunity only applies in a limited category of cases. I suppose he might get sued in his personal capacity, mightn't he? Well, in his personal capacity, I think the individual prosecutorial immunity would apply for the decision to proceed or not to proceed. But that's not an Eleventh Amendment problem. Pardon me? But that wouldn't be a sovereign immunity problem. No, Your Honor, it wouldn't be a sovereign immunity problem. By the way, if the prosecutor really works for the state in bringing prosecutions, I guess really we're not talking about the Eleventh Amendment in this case so much, are we? You're saying he's not a county person. We're saying, yes, Your Honor, that's the reason that the county of Los Angeles is not liable is because the policy is created by policymakers acting on behalf of the state of California. It's not that the county is immune from a Monell claim by a county policymaker. It is that the policymakers were acting on behalf of the state, and the reason they were acting on behalf of the state is because they were creating policies to govern how cases are presented to juries So it's not really an Eleventh Amendment case we're dealing with here? Only indirectly in the sense that the Eleventh Amendment immunity analysis shows that the actors are acting on behalf of the state. It's not that the county of Los Angeles is claiming Eleventh Amendment immunity here. It's only that that's the analysis in order to understand who is responsible for the policies at issue here. The analysis that's done under the Eleventh Amendment is done to show that it's actually policymakers acting on behalf of the state. Well, I understand your argument on that, but if the county is not claiming Eleventh Amendment immunity, which it is not, then how do we have appellate jurisdiction to consider your argument? We only have appellate jurisdiction on absolute immunity and Eleventh Amendment immunity, and what you're really saying is summary judgment is proper for the county through an indirect immunity argument. It seems to me that we have some problems with appellate jurisdiction on that, don't we? Well, I don't think there are problems with appellate jurisdiction because it all arises out of the absolute prosecutorial immunity that applies to the act that injured the plaintiff here, which was the failure to disclose Brady material during trial and resulted in the vacating of his conviction. So it's an immunity analysis and an immunity defense. Well, I'm focusing on your argument that the prosecutor is really acting on behalf of the state, not the county. Would you say that that particular argument – what gives us appellate jurisdiction over that argument? What gives the court appellate jurisdiction over that argument is that it's an immunity analysis. The decision over who has the analysis of who is responsible for the injury to the plaintiff is the Eleventh Amendment immunity analysis because the policy makers who are acting in the district attorney's office to formulate the policies have immunity arising out of the Eleventh Amendment since they act on behalf of the state. But the county is not the state. We know that. The county is not the state. Right. So as to the county, you'd have to say your Eleventh Amendment analysis immunity argument would pose some jurisdictional problems, wouldn't it? Well, I don't think it does pose jurisdictional problems because the analysis of who is responsible for the plaintiff's injury is an Eleventh Amendment immunity analysis. It's not true – every state in the circuit does not give Eleventh Amendment immunity to the prosecutors acting on behalf – acting during trial. California's law does give that immunity to prosecutors and so that Eleventh Amendment immunity also applies to the policy makers acting in the district attorney's office in deciding this issue of how much information to disclose during trial regarding deals with jailhouse informants. You have about two minutes left. Do you want to reserve? I'd like to reserve the balance for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Ronald Kaye appearing on behalf of the appellee, Mr. Thomas Lee Goldstein. The county has made two fundamental misrepresentations. First of all, Your Honor, the issue has nothing to do with disclosing information by the lying deputy in the courtroom. This case is about dissemination of information, a filing system within the county district attorney's office. A little bit strong to say it was a misrepresentation, isn't it? Well, Your Honor, we have a different take on this from you. I didn't hear him misrepresent anything to the Court. Well, I apologize if the Court believes that's strong, but we have emphasized repeatedly and the district court has embraced that this has – this is not based on disclosing information. This is based on dissemination. Your choice of characterization of what you think it's based on, it's your – it's your choice to say, well, California Supreme Court's nuts, and if they have a policy, that's clearly outside of it. California Supreme Court's nuts when it says that's just part of the prosecution. You can't start slicing the thing that thin. So that's your characterization. But to say the other side is making misrepresentations to the Court, it's a little bit strong. I apologize, Your Honor. Your Honor, but the issue is not disclosure. The issue is dissemination. The issue is about – Isn't it ultimately disclosure because of the causality requirement? Well, the causality requirement is not required in the immunity analysis. The immunity analysis asks the Court to focus on the character of the conduct. But, I mean, at the end of the day, you have to show how the policy caused injury to your client, and then you get into the dissemination, don't you? Your Honor, at the end of the day, we need to show causality to have a cause of action. We need to have – show causality to be able to get damages. But Buckley v. Fitzsimmons in the United States Supreme Court specifically says the focus is on the conduct. It is not on the harm. That is what this Court should focus on with regard to Eleventh Amendment and prosecutorial immunity. And the district court was very clear in its order that it's not about disclosing information. The focus is on how in the district attorney's office they met their obligation under Giglio. The functional analysis under Imler v. Packman – What's the obligation under Giglio? The obligation under Giglio, Your Honor, is to make sure that one hand of the prosecutor's office knows what the other hand is doing. That's what Giglio says? Yes. Giglio only says it has to do with making sure that one hand of the prosecutor's office knows what the other hand is doing. It hasn't got anything to do with disclosing things to defendants in cases or disclosing things to the Court. It's just to make sure that one hand knows what the other hand is doing. That's what it says. In your view of Giglio, that's all it says? It ultimately manifests in disclosing impeachment information to the Court and first to the prosecutor, then to the Court, and then to the defendant. But Giglio creates a mandate upon prosecutorial offices in order to ensure that the kind of injustice that occurred there would not occur again, that there was the dissemination information, that there was no hiding of the ball. And that's exactly what occurred in this case. One prosecutor was engaging in plea negotiation, providing benefits to the jailhouse informant. The other prosecutor went to trial and had no idea that this was going to occur. But, Your Honors, the focus is whether this is intimately associated with the judicial system. This Court in Sabaios and this Court in Bishop Paiute focus on the functional analysis. And in this case, it is very clear that we're talking about administrative conduct. We're not dealing with intimately associated with the judicial process. Sabaios goes and says it has to deal with a particular prosecution, Sabaios or an ongoing prosecution. We don't have that in this case. We have an office that is forming a policy with regard to dissemination of information about jailhouse informants prior to any type of prosecution, particularly prior to the prosecution of Mr. Goldstein, prior to the injury even occurring. The goal of prosecutorial immunity and from that 11th Amendment immunity is not to inhibit conduct of the prosecutor in the courtroom, to not cause this prosecutor to look over their shoulders and prevent them from being zealous advocates. In this case, we don't have that whatsoever. In this case, it doesn't have any effect on the prosecutor in the courtroom because that prosecutor was, in fact, in the dark. This is antithetical to the principles of prosecutorial immunity. The DA in the courtroom did not have the opportunity to exercise his discretion. And therefore, he was precluded to use his judgment, which if he's using his judgment, possibly, and that was an issue, that would be something that could be immune from liability. Every line of case has a functional analysis. Even the case that the county seems to embrace the most, which is the California Supreme Court of Pitts, even that case focuses on functional analysis, preparing to prosecute, prosecuting cases. And that's not what we have here. What we have here is a situation where a large prosecutor's office within a municipality who has a mandate from the Supreme Court to create some kind of central index, to create some kind of system to make sure that information is disseminated, that they've made a decision, not in the courtroom, but on an administrative level as if it were a filing system. They didn't do it. And the injustice that manifests from that is profound, because there was never an ability to challenge the key witness that linked Mr. Goldstein to the victim. No one ever said that Mr. Goldstein had any relationship with the victim, except this jailhouse informant who received 43 days in custody for his third or fourth felony. And no one knew this. He was able to say this directly to the jury. It wasn't the prosecutor's fault in the courtroom. It was the administration of the office. It was the policymaking of that office which was at fault. And the emphasis of the county consistently has been let's look at the point of injury. And as Your Honor, Judge Thomas emphasized, should we look at the causality issue? The causality issue is a determined liability. It is not the issue for determining immunity. And the focus, as Buckley v. Fitzsimmons and subsequently and prior to that in Burns v. Reed, is always to focus on the conduct. That's what I provided to the court through our 28-J letter, that the entire premise of the reply brief of the county is incorrect. What the focus should be is not what happened in the courtroom. Every case where there's liability for wrongful prosecution ultimately ends up in the courtroom because that's the context in which the sentence is imposed. But the focus is on where the injury occurred. Can you tell us precisely what's wrong with this argument that the DA acts for both the state and the county? And in this instance, on this record, he was acting for the state. Thank you, Your Honor. The key is to assess the function of the prosecutor at that juncture. And that's what Imler v. Packman, that's what the entire array of cases focus on. And we're not talking about the DA's conduct within the courtroom. We're not talking about the DA preparing to file a case. We're not talking about him presenting information to the grand jury. That characterization of those aspects of the DA's function in the courtroom or preparing to prosecute is not what we're about. And those are both functions which case law shows should be state-driven as a prosecutorial function. What we're talking about is multiple layers before that. We're talking about dissemination of information, administrative conduct. That's where we are. And that is clearly, clearly non-prosecutorial. It's administrative. Even in McMillian, the Supreme Court made a threshold determination. Was the sheriff involved in law enforcement activity? Once they made that determination, then they did their analysis and found there was immunity. But you want him to tell us why you're wrong when you say the primary distinction is whether it's prosecutorial or administrative. That's correct, Your Honor. And if it's prosecutorial in your view, then he's functioning for the state. If it's administrative in your view, then he's functioning for the county. That's correct. That's correct. He needs to be as clear as he can so he can tell us why you're wrong. And if I just my last point, Your Honor, the only argument that the county has made to support the prosecutorial nature is ultimately the manifestation of that conduct in the courtroom. They always evade the actual conduct alleged in the First Amendment complaint, which is dissemination of information, failure to educate personnel within the district attorney's office, which didn't necessarily lead always to prosecution. It also leads to investigation. This Court has held in Milstein v. Cooley and in multiple other cases. That's an awfully long argument beyond your time. Just wrapping up. Thank you, Your Honor. Well, we'll submit. I appreciate your time. Mr. Butler. Did you go straight to that point, Mr. Wilson, or do you need to go somewhere else? I'll go directly to that point, Your Honor. The reason that this is a prosecutive policy is because the injury occurred. Mr. K is exactly right. The county's position is it's because the injury occurred during a trial. The act that injured Mr. Goldstein is an act that is protected by absolute prosecutorial immunity. Therefore, the policymaking relating to that is protected by Eleventh Amendment immunity. If that's not the standard, if the standard pushed by the plaintiffs is adopted, then every policy is administrative. Every policy limits the discretion of prosecutors in the courtroom. Every policy is formed prior to any particular prosecution and is not aimed at any particular prosecution. Every policy would become administrative policy, and so the plaintiff's position is essentially that Manel trumps Eleventh Amendment immunity provided by prosecutors. The county's position preserves the distinction between prosecutive policies and administrative policies. It preserves the Eleventh Amendment and absolute prosecutorial immunity of prosecutors. If the plaintiff's position is adopted, then any criminal defendant who's injured by an act that's protected by absolute prosecutorial immunity can get around that immunity by simply saying the act was taken pursuant to a policy. Therefore, it's a Manel claim not barred by Eleventh Amendment immunity, and therefore every single act of a prosecutor that is now protected by absolute prosecutorial immunity becomes not protected through a suit against the prosecuting agency without that immunity protection. Well, you keep using Eleventh Amendment and absolute immunity interchangeably, and they're quite different. Well, they are different, Your Honor. I believe that the – I'm sorry. Well, absolute immunity has to do with the individual prosecutors and the prosecutorial decision. Eleventh Amendment immunity is just who is being sued. Yes, Your Honor, but the scope of what Eleventh Amendment immunity protects is the same as the scope of what absolute prosecutorial immunity protects for prosecutors. Why do you say that? Because let's assume for the sake of argument we have. What you're saying is that the – is there a case you have that says the county can be considered the state simply because some of the officers who work for the county may also be considered state employees for certain functions? No, Your Honor, and that's not our argument. Well, that is your argument on behalf of the county, that you're able to bootstrap Eleventh Amendment immunity on the county because these prosecutors are working for the state. I don't see how it gets the county out of this. Because the acts are protected by Eleventh Amendment immunity, there's no claim against the county. But the county is not entitled to Eleventh Amendment immunity. That's correct as a municipality. It's not entitled to Eleventh Amendment immunity, but the district attorney's office is entitled to that immunity when it acts on behalf – when it acts within the scope of its prosecutive powers. And that's the – all of the case law on Eleventh Amendment immunity and absolute prosecutorial immunity follow the same functional analysis that Mr. Kaye described. Does the – are the acts intimately related to the judicial process? And if they are, then the acts are protected by both prosecutorial immunity and Eleventh Amendment immunity. Any further questions? Okay. Thank you for your argument. Thank you, Your Honor. The case is certainly submitted. We'll take a short break before the last case on the oral argument calendar. Thank you.
judges: Farris, Fernandez, Thomas